IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARBLE POINT ENERGY LTD, a Canadian corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>MAJESTIC CAPITAL GROUP, LLC, a Utah limited liability company, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING MCG'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST COWAN AND FRONTIER<br><br><br><br>Case No. 2:06-CV-487 TS |
| MAJESTIC CAPITAL GROUP, LLC, a Utah limited liability company, et al.,<br><br>    Third-Party Plaintiffs,<br><br>vs.<br><br>MARK H. KLETTER, et al.,<br><br>    Third-Party Defendants. | |

This matter comes before the Court on Third-Party Plaintiff MCG's Motion for Partial Summary Judgment Against Cowan and Frontier. For the reasons discussed below, the Court will deny the Motion.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## II. FACTUAL BACKGROUND

For the purposes of this Motion, many of the facts are not in dispute. In early 2006, Plaintiff Marble Point Energy Ltd. ("Marble Point") was seeking funding for its oil and gas operations. Marble Point was aware of a potential opportunity to obtain funding from Avro Capital, Inc. ("Avro"), a financial services company located in Montreal, Canada. Avro represented to Marble Point that Avro had a United States partner, Majestic Capital Group, LLC ("MCG"), and that together they would provide funding.

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

On February 27, 2006, Marble Point, an entity known as Profound Learning Systems, Inc. ("PLS"), and Avro executed an agreement entitled a Term Sheet regarding funding for Marble Point and PLS. Based on the provisions of the Term Sheet and on discussions with Avro and MCG, Marble Point understood that Avro and MCG would provide a $45 million line of credit (the "Credit Facility") in favor of Marble Point and PLS.

Marble Point was to provide an initial deposit of $15.4 million, of which $15 million was to be used to initiate the purchase of financial guarantee bonds in a total amount that was much larger than $45 million. The balance of the funds, $400,000, was to be payment of an initial fee to Avro for the provision of the Credit Facility. The financial guarantee bonds would then be used as security by Avro and MCG to obtain funding, including the funding for the Credit Facility.

On or about March 14, 2006, Marble Point sent to the Canadian law firm of Heenan Blaikie the sum of $15.4 million to hold in escrow. On March 27, 2006, Heenan Blaikie caused $15 million to be transferred to Pacific Northwest Title Co. of Oregon ("Pacific Northwest"). On March 29, 2006, Pacific Northwest released the $15 million to an escrow account number provided by MCG.

Third-Party Defendant Elmer C. Cowan ("Cowan") is the Chief Executive Officer and majority stock holder of Frontier International Corp. ("Frontier"). In 2004, Cowan introduced Defendant and Third-Party Plaintiff Stephen E. Gregory ("Gregory") to Third-Party Defendant Mark H. Kletter ("Kletter"). Kletter represented that he and a company with which he is affiliated were authorized agents of an entity operating as Stonecroft Services ("Stonecroft"). Kletter represented that Stonecroft could provide MCG and its clients with financial guarantees from ABN AMRO Bank, a commercial bank headquartered in the Netherlands with offices

throughout the world, and other major banks.  Kletter represented that Stonecroft had connections with insurance underwriters who could insure ABN AMRO and other banks against risk of loss on the guarantees, which Kletter represented was necessary for issuance of bank guarantees.  Kletter made a series of representations to Gregory regarding the ability and authority of Kletter and Stonecroft Canada to obtain bank guarantees from ABN AMRO bank.

In reliance on these representations, in the Spring of 2006, MCG undertook to acquire financial guarantee bonds and provide Marble Point with a Credit Facility backed by a financial guarantee from ABN AMRO Bank to be obtained through Kletter and Stonecroft.  As part of this transaction, on or about March 24, 2006, MCG made and delivered to Marble Point a promissory note in the original principal amount of $15 million (the "Note").  MCG anticipated that its obligation under the Note would be satisfied through providing Marble Point with a credit facility backed by an ABN AMRO guarantee to be provided by Kletter and others working with him.

In March 2006, acting at the direction of Kletter, MCG entered into an Escrow Agreement with an attorney named Deborah Peck, which provided for MCG to deposit $12 million in an attorney trust account maintained by Peck. The $12 million was to be used to cover Stonecroft's cost of obtaining financial guarantee bonds from ABN AMRO Bank totaling $150 million.  Kletter represented to MCG that Stonecroft had obtained an irrevocable commitment on behalf of ABN AMRO to issue bank guarantees in favor of MCG.

On Kletter's instructions, on or about March 28, 2006, MCG caused $12 million it had obtained from Marble Point to be transferred to the attorney escrow account.  Thereafter, Kletter and others associated with him purported to provide various financial guarantee instruments and related documents from ABN AMRO Bank.  MCG asserts that these documents were fraudulent.

Frontier and Cowan dispute this assertion. As a result, MCG has been unable to provide Marble Point with the agreed Credit Facility and has not recovered the $12 million paid to Ms. Peck.

In relation to these transactions, on April 3, 2006, MCG directed disbursement of $499,000 from Pacific Northwest to Frontier in payment for Frontier's work as a consultant in introducing Gregory to Kletter. Frontier expected to be paid $1.5 million for its services, but only received $500,000, less a $1,000 escrow fee. Frontier subsequently transferred the money it received to Cowan and others associated with him.

### III.  DISCUSSION

A.  UNJUST ENRICHMENT

In order to prevail on a claim for unjust enrichment, three elements must be met.

> First, there must be a benefit conferred on one person by another. Second, the conferee must appreciate or have knowledge of the benefit. Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.[4]

The third element is at issue. MCG argues that it would be unjust for Frontier and Cowan to retain any of the money paid to them because Kletter never delivered the promised bonds. According to MCG, since Kletter never delivered the promised bonds, Frontier and Cowan did not earn their fee. Frontier/Cowan respond that the agreement between Frontier and Gregory required Frontier to introduce Gregory to an acceptable source of insurance or re-insurance.[5]

---

[4]*Desert Miriah, Inc. v. B&L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 (internal quotation marks and citation omitted).

[5]Docket No. 169, Ex. 1, at 2. *See also* Docket No. 162, Ex. 1, at 31:6–19.

Frontier/Cowan maintain that by introducing Gregory to Kletter, Frontier had performed under the agreement and would be entitled to a consultant fee.[6]

The Court finds that there are genuine issues of material fact on this issue which preclude the Court from granting summary judgment to MCG on its unjust enrichment claim.  Viewing the facts in the light most favorable to Frontier and Cowan, as it must, the Court finds that a reasonable jury could return a verdict for Frontier and Cowan on this claim.  Of particular importance is Frontier/Coward's claim that their role was simply to introduce Gregory to an acceptable source of insurance or re-insurance.  This, they claim, was completed when Gregory was introduced to Kletter.  Thus, a reasonable jury could find that Frontier/Cowan performed pursuant to the terms of the agreement and were entitled to their fee.  Further, there is no evidence to suggest that successfully obtaining the bonds was a part of the agreement between Gregory and Frontier/Cowan.  Under these circumstances, a reasonable jury could find that it would not be inequitable for Frontier/Cowan to retain the fee.  Therefore, the Court must deny MCG's Motion on this ground.

B.      MONIES HAD AND RECEIVED

In order to assert a claim for monies had and received, MCG must show 'that one has money in hand belonging to another which, in equity and with good conscience, should be paid over."[7]  For the same reasons discussed in relation to its unjust enrichment claim, the Court finds that summary judgment is inappropriate on MCG's claim for monies had and received.

---

[6] Docket No. 169, Ex. 1, at 2.

[7] *CIG Exploration, Inc. v. Hill*, 824 F.Supp. 1532, 1546 (D. Utah 1993).

C.   ALTER EGO

Based on the Court's ruling with respect to MCG's unjust enrichment and monies had and received claims, the Court need not determine at this time whether Frontier is an alter ego for Cowan.

## IV.  CONCLUSION

It is therefore

ORDERED that MCG's Motion for Partial Summary Judgment Against Cowan and Frontier (Docket No. 161) is DENIED.  The hearing set for October 14, 2008, is STRICKEN.

DATED   September 30, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge